IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINA JO FARMER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 21-1896 ) ) |
| KILOLO KIJAKAZI, *Acting Commissioner of Social Security*, | ) ) ) ) |
| Defendant. | |

ORDER

AND NOW, this 15th day of February 2023, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 14) filed in the above-captioned matter on June 13, 2022,

IT IS HEREBY ORDERED THAT THE Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 12) filed in the above-captioned matter on May 13, 2022,

IT IS HEREBY ORDERED that Plaintiff's Motion is GRANTED insofar as she has sought remand for further administrative proceedings. Accordingly, this matter is hereby remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g).

I.   **Background**

Plaintiff protectively filed an application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.*, on September 20, 2019. (R. 15). She alleged therein that October 1, 2016, was her disability onset date. (*Id.*). The claim was initially denied and denied upon reconsideration, so Plaintiff sought a hearing before an Administrative Law Judge ("ALJ") who found her to be not disabled from the alleged onset date through her date last insured ("DLI"), December 31, 2018. (R. 15, 27). Plaintiff sought review of the decision before the Appeals Council, but the Appeals Council "found no

reason under [its] rules to review the [ALJ's] decision" and denied Plaintiff's request for review. (R. 1). Upon the Appeals Council's denial of review, the ALJ's decision became the agency's final decision. 20 C.F.R. § 404.981. That decision is now before the Court for review.

## II. Standard of Review

The Court's review of the agency's final decision is plenary for questions of law, *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999), and it reviews the ALJ's findings of fact for "substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 42 U.S.C. § 405(g)). The evidentiary threshold for substantial evidence is "not high." *Id.* at 1154. It "means only . . . 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the ALJ's decision is supported by such evidence, the Court may not "set aside" the decision "even if this Court 'would have decided the factual inquiry differently.'" *Hansford v. Astrue*, 805 F. Supp. 2d 140, 143 (W.D. Pa. 2011) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

ALJs use a five-step sequential analysis to evaluate disability alleged under the Act. *Edwards v. Berryhill*, No. CV 16-475, 2017 WL 1344436, at *1 (W.D. Pa. Apr. 12, 2017) (citing 20 C.F.R. § 404.1520(a)). Pursuant thereto:

> The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity.

*Id.* (citing 20 C.F.R. § 404.1520). Before resolving the inquiries presented at steps four and five, an ALJ must formulate the claimant's residual functional capacity ("RFC"), which is a finding of the claimant's maximum sustained work ability in spite of limitations that arise from his or her medically determinable impairments. 20 C.F.R. §§ 404.1520(a)(4)(iv)—(v), 404.1545(a)(1). The burden of proof is on the claimant for the first four steps of this evaluation until, at step five, it "shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity." *Edwards*, 2017 WL 1344436, at *1 (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979)).

### III. The ALJ's Decision

In this matter the ALJ found Plaintiff had not worked during the period relevant to her claim (October 1, 2016, through December 31, 2018). (R. 17). He next found Plaintiff had eleven severe medically determinable impairments including "coronary artery disease," "hypertension," "aneurysm of the carotid artery," "status post anterior cervical discectomy and fusion (ACDF) with plating at C5-6," and "multiple sclerosis (MS)." (*Id.*). After finding that Plaintiff's impairments neither met nor equaled the severity of a listed impairment (R. 18) the ALJ formulated Plaintiff's RFC. (R. 20). He found Plaintiff would be limited to "light work" with added physical limitations such as "an opportunity to alternate sitting and standing every thirty minutes" and limitation to only "frequently handle, finger and feel bilaterally." (*Id.*). The ALJ also restricted Plaintiff to work that would only require "routine, repetitive tasks at the SVP 1 to 2 level with no commercial or nighttime driving" and eliminated work that would require "concentrated exposure to extremes of noise," "light," "heat, cold, vibration, wetness, humidity, and environmental irritants." (*Id.*). This RFC would not have permitted a return to Plaintiff's past work as a "nurse aid" or "home health aide" during the period relevant to her claim;

however, Plaintiff's RFC, age, education, and work experience were found to be compatible with work that corresponded to approximately 21,000 jobs in the national economy. (R. 25—27). Accordingly, the ALJ found Plaintiff to be not disabled. (R. 27).

IV.     **Legal Analysis**

Plaintiff has argued that the ALJ made three errors in his decision. First, Plaintiff has argued that the ALJ's consideration of her headaches was inadequate. Second, Plaintiff has argued that the ALJ failed to recognize that she had medically determinable mental health impairments. Third, Plaintiff has argued that the ALJ failed to craft an RFC with limitations that reflected all her severe and non-severe medically determinable impairments especially with respect to the "complex interplay between episodic neurological and cardiac symptoms." (Doc. No. 13, pg. 17). Because the ALJ's exceedingly brief mention of evidence related to Plaintiff's headaches fails to show the Court that he considered all the evidence relevant to Plaintiff's impairments and associated limitations during the relevant period, the Court will order the remand of this matter for further proceedings.[1]

"[A]n administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981). ALJs are not required to "discuss every piece of evidence in the record." *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014). However, an ALJ "must provide at least a glimpse into his [or her] reasoning" by "build[ing] an accurate and logical bridge between the evidence and the result." *Id.* (citing *Hodes v. Apfel*, 61 F. Supp. 2d 798, 806 (N.D. Ill. 1999)). Therein, the ALJ may not "reject evidence for no reason or the wrong reason." *Cotter,* 642 F.2d

---

[1] Because the first issue raised by Plaintiff has convinced the Court of the necessity of remand, the Court herein only briefly addresses Plaintiff's other arguments.

at 706–07.  If the ALJ "fail[s] to consider all of the relevant and probative evidence," this Court may not endeavor to "rectify [such an] error by relying on medical records found in its own independent analysis."  *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001).

Pursuant to this standard, the Court finds that the ALJ's consideration of evidence in Plaintiff's record related to headaches during the relevant period is inadequate.  In his decision, the ALJ acknowledged Plaintiff's headaches only twice.  First, in his explanation for the RFC determination, the ALJ noted that Plaintiff "testified that she has side effects from medications including nausea and headaches/migraines."  (R. 21).  Later in the decision the ALJ noted that "[t]reatment notes *after the date last insured* from July 16, 2019 indicate[d] the claimant reported she was having headache almost daily and she did not feel Aubagio"—an MS medication—"was working."  (R. 23 (emphasis added)).  These two brief references to Plaintiff's headache testimony and post-DLI headaches fail to show the Court that the ALJ considered significant headaches evidence from the period relevant to Plaintiff's claim.

As an initial matter, Plaintiff's headache testimony does not appear to be that she only experienced headaches as a side effect of her medications; rather, Plaintiff appeared to indicate that she was unsure of the cause of her headaches.  In response to a question about whether she experienced side effects of medications, Plaintiff responded that she had nausea and added: "I don't know if the headaches probably come from my neck[,] but I've had a lot of trouble with migraines and headaches."  (R. 46).  Plaintiff added that she had been "put . . . on medication for that" in the past.  (*Id.*).  When asked how she "cope[d]" with her headaches, Plaintiff responded that she would lay down.  (*Id.*).  She testified that she experienced "bad migraines" as frequently as "maybe three or four times a month."  (R. 46—47).  She explained that she had other headaches more frequently, but that she "had to lay down and . . . couldn't move" for these more

5

serious episodes. (R. 47). Plaintiff indicated that she thought these migraines afflicted her "before 2018," and she later testified she had migraines prior to and in 2017. (R. 47, 53).

Plaintiff's treatment records appear to be at least somewhat supportive of her testimony with respect to headaches during the relevant period. For instance, in August 2017 Plaintiff reported "frequent headaches" with "OTC meds not helping," and she further reported "lightheadedness" associated with the headaches. (R. 352). In November 2017, Plaintiff reported that she was being treated by Dr. Brenda Adamovich for "headaches/diplopia/balance issues" and that she had an MRI scheduled. (R. 367). "Headache" was among Plaintiff's assessed conditions at that time, and she was noted to be taking Topiramate. (R. 370). In other records from the same time, it was noted that Plaintiff had been contacted to be informed "that there would be another script of Topamax 100mg qhs" available to her after she finished "her 25mg tabs." (R. 654).[2] The following month (December 2017), Plaintiff presented to Dr. Adamovich's office for headaches, and records from that time indicate that Plaintiff reported migraines starting as early as 2009. (R. 624, 626). Plaintiff indicated that her headaches got better after she had neck surgery, but that they had subsequently increased in frequency, with "headaches" occurring as often as "3—4 times per week" and "bad headaches" occurring as frequently as "2—3 times per month." (R. 626). Plaintiff's headaches were described as "bilateral temporal plus shooting parietal pain several times per week." (*Id.*) Plaintiff also reported at least two instances of associated vision loss. (*Id.*).

When Plaintiff was referred to Dr. Yuriko Fukuta for chronic sinusitis and an elevated white blood cell count in December 2017, she reported migraines. (R. 611). The following year,

---

[2] Topamax is a brand name for Topiramate. TOPAMAX, https://www.topamax.com/ (last visited Feb. 7, 2023).

in March 2018, notes from Dr. Andrew Ku at Allegheny General Hospital indicate Plaintiff was referred by Dr. Adamovich for "abnormal **imaging** and headaches." (R. 290). In October 2018 Plaintiff was "[c]onsidering [B]otox for migraines." (R. 454). Another treating source, Dr. Kristen Romesburg, included among her assessments at that time: "Migraine with aura, not intractable, without status migrainosus" and the comment on this assessment was that Plaintiff was "following with neurologist." (R. 457).

The ALJ largely overlooked this evidence by making only one reference to Plaintiff's headaches during the relevant period. Defendant has argued that, critically, the ALJ did not fail to consider Plaintiff's largely unremarkable neurological records (R. 23). The Court recognizes that those records may have led the ALJ to conclude that Plaintiff's headaches were not themselves a medically determinable impairment for lack of "objective medical evidence" because "diagnosis or a statement of symptoms" will not "establish the existence of an MDI." SSR 19-4P, 2019 WL 4169635, at *2, 5 (S.S.A. Aug. 26, 2019); 20 C.F.R. § 404.1521 (explaining there must be "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques" to find a medically determinable impairment). However, even if the evidence in Plaintiff's record led the ALJ to that conclusion, it would still be unclear why the ALJ did not discuss relevant headache evidence in his evaluation of symptoms of Plaintiff's other impairments and their limiting effect(s).

Further, the Court's primary concern is that the ALJ did not provide enough insight into his reasoning with regard to the headache evidence for the Court to understand how it factored into his analysis. Without "at least a glimpse into [the ALJ's] reasoning," the Court is left to guess at his rationale. *Gamret*, 994 F. Supp. 2d at 698; *Shaffer v. Colvin*, No. CIV. A. 14-1114, 2015 WL 4077759, at *7 (W.D. Pa. July 6, 2015) (explaining that the Court could not "interpret

the ALJ's silence as a determination that Plaintiff's headaches were not a medically determinable impairment or that they were not 'severe.''). Not only that, but the ALJ's characterization of the headache evidence suggests that Plaintiff's headaches were mostly a post-DLI problem (R. 23) which is not supported by the evidence predating December 31, 2018 discussed herein. Accordingly, the best course is for the Court to order remand.[3]

---

[3] Plaintiff's other arguments for remand are largely unpersuasive. Plaintiff has argued that the ALJ failed to clearly incorporate limitations arising from her "chest pain," "depression and anxiety, headaches, and cervical radiculopathy" in the RFC. (Doc. No. 13, pg. 16). Pursuing that argument further Plaintiff argued the "ALJ failed to consider the complex interplay between episodic neurological and cardiac symptoms" in his formulation of the RFC, and that he should have enlisted a medical expert to help him analyze the evidence in this case. (Doc. No. 13, pg. 17). For support, Plaintiff has cited SSR 18-01P, but that ruling is not applicable. 2018 WL 4945639, at *1 (S.S.A. Oct. 2, 2018) (explaining that the ruling addresses how to "determine the [established onset date ('EOD')] in claims that involve traumatic, non-traumatic, and exacerbating and remitting impairments"). And the decision to call a medical expert is discretionary. *Kushner v. Comm'r Soc. Sec.*, 765 Fed. Appx. 825, 829 (3d Cir. 2019). Moreover, this argument is so general that it appears to merely be a request to reweigh the evidence. That said, the Court acknowledges that a claimant's RFC must reflect limitations arising from all impairments, so compliance with this Order—that is, further consideration of relevant headaches evidence—may affect an ALJ's consideration of other evidence relevant to the RFC. The Order is broad enough to permit additional consideration of all evidence relevant to Plaintiff's RFC.

Plaintiff has also argued that the ALJ should have included depression and anxiety among her medically determinable impairments because her treating sources "diagnose[d] her with a mental health impairment of Adjustment Disorder involving depression and anxiety" and there was evidence that she experienced symptoms associated therewith, such as an anxious mood. (Doc. No. 13, pg. 16). The Court has not found this argument to be convincing because the ALJ's explanation of his consideration of Plaintiff's alleged mental health impairments was adequate. The ALJ explained that though Plaintiff reported depression and anxiety, he found the State agency psychological consultants' finding of no medically determinable mental impairments to be "persuasive." (R. 25). Making this argument, Plaintiff has largely relied on diagnostic evidence to challenge the ALJ's analysis, but "[a] mere diagnosis or subjective statement of symptoms alone is insufficient to demonstrate a medically determinable impairment for social security purpose." *Remaley v. Saul*, No. CV 2:19-1493, 2021 WL 1224519, at *3 (W.D. Pa. Mar. 31, 2021) (citing 20 C.F.R. § 404.1521). Plaintiff has cited certain other evidence that she has said proves there were objective abnormalities to establish a mental health impairment(s) such as a prescription for Lexapro (antidepressant), recommendation for counseling, and observation of anxious affect. (Doc. No. 13, pg. 16). But even assuming the ALJ erred in not finding any medically determinable mental health impairments, Plaintiff has not

V.      **Conclusion**

Based on the foregoing, the Court has determined the ALJ's decision reflects inadequate consideration of all the evidence relevant to Plaintiff's claim. The Court does not suggest that remand will necessarily lead to a different outcome, but further consideration and explanation is necessary. Accordingly, the Court remands this matter to the Acting Commissioner for proceedings consistent with the Order.

s/ Alan N. Bloch<br>
United States District Judge

ecf:    Counsel of Record

---

shown the error harmed her. Her only argument concerning harm is that there "are no mental limitations as part of the ALJ's adopted RFC" (Doc. No. 13, pg. 15) but, to the contrary, the ALJ limited Plaintiff "to routine, repetitive tasks at the SVP 1 to 2 level." (R. 20).